UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| MARQUIS PROCAP SYSTEM, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 20-1020 |
| NOVOZYMES NORTH AMERICA, INC. and GREEN PLAINS, INC., | ) |
| Defendants. | ) |

## ORDER AND OPINION

This matter is now before the Court on Defendant Green Plains, Inc.'s ("Defendant")[1] Motion to Dismiss Plaintiff Marquis ProCap System, LLC's ("Plaintiff") Complaint under Federal Rule of Civil Procedure 12(b)(2). ECF No. 24. For the reasons stated below, Defendant's Motion to Dismiss is DENIED without prejudice. The parties will be ALLOWED to conduct limited jurisdictional discovery.

## BACKGROUND

Plaintiff is a dry-mill ethanol facility with its headquarters in Hennepin, Illinois.[2] In addition to fuel-grade ethanol, Plaintiff's facility produces and sells other co-products of ethanol production, such as distillers dried grains with solubles ("DDGS"), modified wet distillers grains with solubles ("MWDGS"), and wet distillers grains with solubles ("WDGS"). Plaintiff has engineered and developed innovative proprietary processes, technology, and systems for recovering and removing total suspended solids from whole stillage or thin stillage by-product that

---

[1] Defendant Novozymes North America, Inc. has not moved to dismiss this matter.
[2] The facts in the background section are derived from Plaintiff's Complaint. ECF No. 1

1

is generated during corn-to-ethanol production. Plaintiff has named these innovative proprietary processes, technology, and systems the ProCap Process, Products, and System ("ProCap").

In October 2018, Plaintiff and Defendant Novozymes North America, Inc. ("Novozymes") explored the possibility of forming a collaborative partnership with respect to ProCap. In June 2019, Novozymes and Plaintiff signed a mutual confidentiality agreement "intended to provide mutual protection for both parties' disclosure of confidential and proprietary information pursuant to their ongoing business relationship and exploration of future opportunities going forward." ECF No. 1 at 6. Following the formalization of their agreement, Plaintiff and Novozymes continued exploring a potential partnership with respect to ProCap and held several meetings from July 2019 through December 2019. On December 16, 2019, Novozymes announced that it was "entering into an exclusive partnership and commercialization agreement with Green Plains . . . to develop microbial processes to generate high-protein animal feed during the ethanol production process." *Id.* at 11. Plaintiff considers Green Plains to be a competitor. Plaintiff alleges that Novozymes misappropriated its trade secrets with respect to ProCap and argues that Novozymes would "not [be] able to embark on its new venture with Green Plains without misappropriating Marquis's trade secrets in ProCap." *Id.*

On January 14, 2020, Plaintiff filed its Complaint seeking emergency injunctive relief against all Defendants. ECF No. 1. In its Complaint, Plaintiff alleges a violation of the Defend Trade Secrets Act, 18 U.S.C. § 1831, *et. seq.* ("DTSA") against both Defendants (Count I); a violation of the Illinois Trade Secrets Act, 765 Ill. Comp. Stat. § 1065, *et. seq.* against both Defendants (Count II); and breach of contract against Novozymes (Count III). Also, on January 14, 2020, Plaintiff filed an Emergency Motion for Temporary Restraining Order and a Motion to Expedite Discovery. ECF Nos. 5, 10. On January 15, 2020, the Court held a hearing on Plaintiff's

emergency requests. During the hearing, the Parties represented that an agreement had been reached on the pending emergency motions. On January 16, 2020, the Court adopted a proposed order submitted by the Parties which addressed issues raised in the emergency motions. ECF No. 19. On January 31, 2020, Defendant Green Plains filed a Motion to Dismiss Plaintiff's Complaint. ECF No. 24. On February 5, 2020, Defendant Novozymes filed its Answer. ECF No. 27. On April 3, 2020, Plaintiff filed its response to Defendant's Motion to Dismiss. ECF No. 39. On April 14, 2020, Defendant filed its reply. ECF No. 43. This Opinion follows.

## STANDARD OF REVIEW

Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Under *International Shoe v. State of Washington*, 326 U.S. 310 (1945), the exercise of jurisdiction must be consistent with "traditional notions of fair play and substantial justice." *Id.* at 316. Under Rule 12(b)(2), if this Court lacks personal jurisdiction over Defendant, it must dismiss the Complaint against it. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). "Personal jurisdiction determines, in part, where a plaintiff may hale a defendant into court." *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548 (7th Cir. 2004). Once personal jurisdiction is challenged, the plaintiff has the burden of demonstrating the existence of jurisdiction. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000).

This Court is ruling on Defendant's Motion based on the submission of written materials, and, therefore, Plaintiff "need only make out a prima facie case of personal jurisdiction." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002); *see Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983) ("To determine whether exercising personal jurisdiction is proper, a court may receive and weigh affidavits prior to trial on the merits . . . if the district court's decision

is based on the submission of written materials the burden of proof is met by a prima facie showing.")(internal citation omitted). Furthermore, the Seventh Circuit has explained that "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue,* 338 F.3d at 783.

Accordingly, the Court analyzes Defendant's Motion to Dismiss with the understanding that Plaintiff must make out a prima facie case of personal jurisdiction with the Seventh Circuit's additional requirement that Plaintiff submit affirmative evidence supporting the exercise of jurisdiction.

## ANALYSIS

Plaintiff's Complaint alleges that Defendant Green Plains is subject to personal jurisdiction in Illinois because:

> it leases land and operates a facility located in Madison, Illinois, it regularly transacts business in Illinois through multiple subsidiaries and/or affiliates that maintain registered agent offices in Illinois, and it engaged in intentional, unlawful, and tortious conduct in Illinois, and which was calculated to harm Marquis in Illinois.

ECF No. 1 at 2.

In response, Defendant argues that Plaintiff has not shown that it has sufficient minimum contacts with Illinois in order for the Court to have personal jurisdiction over it. In support of its argument, Defendant relies on the declaration of its CEO, which states that Defendant is not registered to do business in Illinois, does not have an agent for service of process in the state, does not engage in sales or extensive advertising within the state, and has no physical presence within the state. ECF No. 24-1. Instead, Defendant asserts that it is an Iowa corporation with its principal place of business in Omaha, Nebraska. *Id.* Defendant's CEO further contends that while it has five

4

subsidiaries registered in Illinois, they are separate legal entities, and their physical presence in Illinois is unrelated to any allegations in the Complaint. *Id.*

The five subsidiaries include: Green Plains Madison LLC, Green Plains Trade Group LLC, Green Plains Grain Company LLC, Green Plains Ethanol Storage LLC, and Green Plains Logistics LLC. *Id.* Plaintiff argues that Defendant conducts substantial and ongoing business in Illinois through these five subsidiaries and regularly holds itself out to the world as doing business in Illinois. Plaintiff contends that the following actions establish a prima facie showing of personal jurisdiction over Defendant: (1) Defendant's CEO has made statements on earning calls such as "our Madison [Illinois] plant;" (2) Defendant's 2016 10-K states: "our ethanol production segment includes the production of ethanol distillers grains and corn oil at 17 ethanol plants [including] in Illinois . . . there were 127 operational plants in states where we have production facilities, including Illinois;" (3) Defendant's 2017 10-K states: "our vinegar operations include seven production facilities . . . [including] Illinois;" (4) Defendant's website lists Madison, Illinois, as one of the locations for its ethanol plants, and the website also states that it acquired a plant in Madison, Illinois; and (5) in May 2019, a meeting occurred between Defendant's CEO and Plaintiff's CEO in a Chicago airport. ECF Nos. 39 at 2-4; 39-1; 39-2; 39-3; 39-4.

    A.    *Subsidiaries*

Most of Plaintiff's arguments surround the existence of Defendant's subsidiaries in Illinois and how Defendant holds these subsidiaries out as its own; thus, essentially doing business in the state. Defendant argues that Plaintiff fails to demonstrate that it exercises the amount of control necessary over these subsidiaries to hale it into court in Illinois, and that any control it has is normal for a parent company.

In order to prevail under specific or general jurisdiction, Plaintiff must show an exception to the rule that the "jurisdictional contacts of a subsidiary corporation are not imputed to the parent." *Purdue*, 338 F.3d at 788. Of note, Plaintiff has not contested whether it has specific jurisdiction over Defendant; rather, Plaintiff solely argues general jurisdiction in its response. Therefore, Plaintiff has waived this argument. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (explaining that forfeiture occurs where the "litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss"); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument [in a motion to dismiss] ... results in waiver."). Courts have general jurisdiction over a defendant when the defendant has "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416 (1984). "The threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence," *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010), so "the defendant could reasonably foresee being haled into court there on any matter." *Int'l Med. Grp., Inc. v. Am. Arbitration Ass'n, Inc.,* 312 F.3d 833, 847 (7th Cir. 2002). For this reason, a defendant is subject to general jurisdiction only where its contacts with the forum state are so substantial that it can be considered "constructively present" or "at home" in the state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Purdue*, 338 F.3d at 787.

Personal jurisdiction will not be found where "corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary." *Cent. States Areas Pension Fund*, 230 F.3d at 943. Courts exercise jurisdiction over parent companies based on their subsidiaries' activities "where the corporate veil can be pierced, or perhaps where all the corporate formalities are observed but the subsidiary's only purpose is to

conduct the business of the parent." *Id.* at 940. The latter is what Plaintiff is asking the Court to consider: whether Defendant is so closely linked to its Illinois subsidiaries to create jurisdiction. If the Illinois subsidiaries are acting as Defendant's agent in Illinois, in essence conducting Defendant's business rather than their own, then Defendant can rightfully be sued. *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.,* 136 F.3d 537, 541 (7th Cir. 1998). Factors to consider in determining whether a parent corporation is doing business in Illinois through its subsidiary include: "(1) the degree of control exercised by the parent over the subsidiary, (2) the obligations of the subsidiary to service the parent's products, (3) inclusion of the subsidiary's name and address in the parent's advertising, (4) joint sponsorship of promotional activities, (5) interlocking directorships, (6) location of the meetings of the subsidiary's board of directors, and (7) whether the subsidiary is authorized to prosecute trademark infringement suits in the parent's name." *Montalbano v. HSN, Inc.*, No. 11 C 96, 2011 WL 3921398, at *3 (N.D. Ill. Sept. 6, 2011) (internal citation omitted).

Here, while Defendant argues in its Motion that the degree of control it exercises is normal for a parent company, the declaration of its CEO omits this contention. The declaration acknowledges that Defendant has subsidiaries that conduct business in Illinois, and that they have a physical presence within the state. The declaration does not describe what kind of control, if any, Defendant exerts over the subsidiaries, or how their relationship functions. The CEO essentially asserts that the purpose of the subsidiaries is to benefit one another (i.e., Green Plains Grain originates grain for Green Plains Madison, Green Plains Ethanol stores the ethanol made by Green Plains Madison, and so on); however, the Court does not have enough information before it that demonstrates the degree of how the Illinois subsidiaries affect Defendant. Thus, it is difficult for the Court to discern if *Montalbano* factors one and two, and four through seven, exist. Plaintiff has

provided some evidence that could satisfy factor three as the subsidiary's name and address are included in Defendant's advertisements; specifically, its website lists the Madison, Illinois, subsidiary under one of its locations. Moreover, under the ethanol tab on Defendant's website, it states that the Madison, Illinois, plant is part of its network of "13 ethanol plants [that] produce a total of approximately 1.1. billion gallons of fuel-grade ethanol annually, making Green Plains the second largest ethanol producer in the world." ECF No. 39-4 at 3. This suggests that, at least, the Madison, Illinois, subsidiary may have obligations to service Defendant on a greater scale. The Court finds that Plaintiff has presented sufficient evidence to suggest that the record is ambiguous or unclear regarding how much control, if any, Defendant has over the Illinois subsidiaries. Accordingly, the Court denies Defendant's Motion to Dismiss without prejudice.

      B.     *Jurisdictional Discovery*

Plaintiff also seeks leave to take limited discovery regarding personal jurisdiction. While "[t]he Federal Rules of Civil Procedure allow liberal discovery into relevant matters, including discovery directed to personal jurisdiction," *Gilman Opco LLC v. Lanman Oil Co., Inc.*, No. 13-cv-7846, 2014 WL 1284499, at *6 (N.D. Ill. Mar. 24, 2014), "[a]t a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted[,]" *Cent. StatesAreas Pension Fund*, 230 F.3d at 946. "Generally, courts grant jurisdictional discovery if the plaintiff can show that the factual record is at least ambiguous or unclear on the jurisdiction issue." *Ticketreserve, Inc. v. viagogo, Inc.,* 656 F. Supp. 2d 775, 782 (N.D. Ill. 2009). "The standard is low, but a plaintiff's request will be denied if it is based only upon unsupported assertions of personal jurisdiction." *Id.* (citing *Cent. States,* 230 F.3d at 946). If a plaintiff establishes a prima facie case of personal jurisdiction, courts should permit it to conduct limited discovery to address the personal jurisdiction issues raised by a defendant's motion to

8

dismiss. *See Cent. States,* 230 F.3d at 876–77. In reaching this issue, the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record. *Id.* at 878.

The evidence before the Court at this stage is that Defendant is an Iowa corporation with its principal place of business in Omaha, Nebraska, but with five subsidiaries that conduct business in Illinois. Limited discovery is appropriate to determine at least "(1) the degree of control exercised by the parent over the subsidiary, (2) the obligations of the subsidiary to service the parent's products, (3) inclusion of the subsidiary's name and address in the parent's advertising, (4) joint sponsorship of promotional activities, (5) interlocking directorships, (6) location of the meetings of the subsidiary's board of directors, and (7) whether the subsidiary is authorized to prosecute trademark infringement suits in the parent's name." *Montalbano,* 2011 WL 3921398, at *3. The Court concludes that limited jurisdictional discovery can shed light on the aforementioned factors.

## CONCLUSION

For the reasons stated above, Defendant's [24] Motion to Dismiss is DENIED without prejudice. The Parties shall cooperate in limited jurisdictional discovery within the next thirty (30) days and provide the Court with a status report on or before June 12, 2020. If there are any disputes, the Parties are DIRECTED to immediately bring it to the Court's attention. Defendant may bring another motion to dismiss after the limited discovery, if warranted.

ENTERED this 12th day of May, 2020.

                                                        /s/ Michael M. Mihm
                                                        Michael M. Mihm
                                                   United States District Judge