UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| MARQUIS PROCAP SYSTEM, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 20-1020 |
| NOVOZYMES NORTH AMERICA, INC. | ) |
| Defendant. | ) |

## ORDER AND OPINION

Before the Court is Defendant Novozymes North America, Inc.'s Motion to Dismiss Plaintiff Marquis ProCap System, LLC's Amended Complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(1). ECF No. 295. The Court held oral argument on this Motion on April 25, 2023 and announced that the Motion was denied. This written opinion follows to provide additional clarification on the Court's ruling.

## BACKGROUND

Plaintiff Marquis is a dry-mill ethanol facility with its headquarters in Hennepin, Illinois. In addition to fuel-grade ethanol, Plaintiff's facility produces and sells other co-products of ethanol production. Defendant Novozymes was a supplier to Plaintiff, supplying enzymes and microbes that Plaintiff utilized in its business. In short, Plaintiff asserts that it spent tens of millions of dollars developing an innovative system for processing the co-products of the corn-to-ethanol production and that under the guise of entering a partnership, Novozymes stole that information with the intention of sharing it with Plaintiff's competitor, the now-dismissed Defendant Green Plains.

Plaintiff pleads that it explored a potential partnership with Novozymes and to that end, Plaintiff shared trade secrets over the period of several months. Prior to sharing the purported trade

1

secrets, the parties entered a Mutual Confidentiality Agreement prohibiting Novozymes from sharing Plaintiff's trade secrets. Novozymes then surprised Plaintiff by announcing it was entering a partnership with Plaintiff's competitor, Green Plains. Plaintiff alleges that because the same scientists worked on both partnerships and because the partnership with Green Plains would require the use of the trade secrets that Plaintiff shared with Novozymes, that Novozymes must have stolen its information.

On January 14, 2020, Plaintiff filed its Complaint seeking emergency injunctive relief against Novozymes and the now-dismissed Green Plains. ECF No. 1. The Complaint alleged violations of the Defend Trade Secrets Act (Count I); and violations of the Illinois Trade Secrets Act (Count II) against Novozymes and Green Plains. It further alleged breach of contract against Novozymes (Count III). Plaintiff also filed an Emergency Motion for Temporary Restraining Order and a Motion to Expedite Discovery, and the Court held a hearing on Plaintiff's emergency requests. During the hearing, the Parties represented that they reached an agreement on the pending emergency motions, and the Court adopted their proposed order. ECF No. 19.[1]

Green Plains filed a motion to dismiss Plaintiff's Complaint for lack of personal jurisdiction, explaining that it is an Iowa corporation with a principal place of business in Nebraska with no role in the activity between Novozymes and Plaintiff that occurred in Illinois. ECF No. 24. The Court allowed Plaintiff to conduct limited jurisdictional discovery and ultimately granted Green Plains' motion to dismiss. ECF No. 90.

---

[1] The Court later dissolved the agreed temporary order but ordered the parties to continue to abide by the Mutual Confidentiality Agreement that was already in effect. The Court then held a second hearing on Plaintiff's Motion for a Preliminary Injunction in December of 2020. ECF Nos. 142; 143. Ultimately, by agreement of the parties, Plaintiff was granted leave to withdraw its Motion for Preliminary Injunction and the Court adopted the Mutual Confidentiality Agreement previously entered into by the parties. Text Order dated 1/21/2021.

Over the last three years, Plaintiff and Novozymes engaged in extensive discovery. After fact discovery closed, Plaintiff amended its complaint to include language that it is seeking to recover both for an actual disclosure of its purported trade secrets and for the future threat that Novozymes will inevitably use or disclose trade secrets to others. ECF No. 290. The Parties moved forward with briefing summary judgment and Novozymes moved to dismiss the Amended Complaint for lack of standing amidst summary judgment briefing. This Order addresses only the arguments found in Novozymes' motion to dismiss.

## LEGAL STANDARD

Novozymes brings this motion under Federal Rule of Civil Procedure 12(b)(1) which governs challenges to subject matter jurisdiction, including for lack of standing. "The standing requirement inheres in Article III of the Constitution, which requires that a party seeking to invoke the jurisdiction of the federal courts must present an 'actual case or controversy.'" *Perry v. Sheahan*, 222 F.3d 309, 313 (7th Cir. 2000) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)). Plaintiff, as the party seeking to invoke federal jurisdiction, bears the burden of demonstrating that (1) it suffered an injury in fact, (2) the injury is traceable to the challenged conduct of the defendant, and (3) the injury is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330 , 338 (2016). When a defendant challenges Article III standing as a factual matter, "a plaintiff can no longer rely on mere allegations of injury; he must provide *evidence* of a legally cognizable injury in fact." *Flynn v. FCA US LLC*, 39 F. 4th 946, 950 (7th Cir. 2022).

## DISCUSSION

Discovery has now closed, and Plaintiff acknowledged at the oral argument held on April 25, 2023 that it does not have direct evidence that Novozymes shared its trade secrets with Green

Plains. Plaintiff has previously acknowledged that its focus is now on the threat of future breach. ECF No. 301-1 at 8. The changes in the Amended Complaint were only to add allegations about the threat of future breach. Novozymes argues that Plaintiff's admission that information has not been shared demonstrates that Plaintiff lacks standing and cannot maintain this lawsuit. The Court disagrees, as explained below.

### A. Plaintiff has standing under the Illinois Trade Secrets Act and the Defend Trade Secrets Act.

Plaintiff has brought claims alleging breach of the Illinois Trade Secrets Act 765 ILCS § 1065, *et seq.*, ("ITSA") and the Defend Trade Secrets Act 18 U.S.C. § 1831, *et seq.*, ("DTSA"). Courts have recognized that the "pertinent definitions of the two acts overlap" and have thus analyzed the DTSA and ITSA together. *Vendavo, Inc. v. Long*, 397 F. Supp. 3d 1115, 1149 (N.D. Ill. 2019) (citing *Molon Motor & Coil Corp. v. Nidec Motor Corp.*, 2017 WL 195453, at *2 (N.D. Ill. May 11, 2017)). To establish misappropriation of a trade secret, a plaintiff must demonstrate that the information in question was (1) a trade secret; (2) misappropriated; and (3) that the trade secret owner was damaged. *Nat'l Tractor Parts Inc. v. Caterpillar Logistics Inc.*, 171 N.E. 3d 1 (Ill. App. Ct. 2020) (quoting *Liebert Corp. v. Mazur*, 827 N.E.2d 909 (Ill. App. Ct. 2005)). Novozymes argues that Plaintiff has not alleged a concrete injury and thus, does not have standing to pursue this case.[2]

Despite Novozymes's arguments, the ITSA states that "[a]ctual or *threatened* misappropriation may be enjoined." 685 ILCS 1065/3 § 3(a) (emphasis added). The DTSA similarly allows a court to grant an injunction "to prevent any actual or threatened misappropriation." 18 USC § 1836 (b)(3)A(i). The cases that Novozymes cites also acknowledge

---

[2] Defendant includes a footnote that it denies that Plaintiff shared trade secret information but leaves that issue for summary judgment briefing.

4

that "[b]oth the DTSA and ITSA permit a court to enjoin actual or threatened trade secret misappropriation." *Phillips Med. Sys. (Cleveland), Inc. v. Buan*, 19-cv-2648 2023 WL at *5 (N.D. Ill. Jan. 10, 2023) (citing 18 U.S.C. § 1836 (b)(3)(a)(i); 765 ILCS 1065/3(a); s*ee also Packaging Corp of Am., Inc. v. Croner,* 419 F. Supp. 3d 1059, 1069 (N.D. Ill. 2020) ("The DTSA allows courts to grant injunctions in certain circumstances for 'threatened misappropriation.'"). The Seventh Circuit has further clarified that a plaintiff may "provide a claim of trade secret misappropriation by demonstrating that [a] defendant's new employment will inevitably lead him to rely on the plaintiff's trade secrets." *PepsiCo, Inc. v. Redmond,* 54 F.3d 1262, 1269 (7th Cir. 1995). In evaluating whether a defendant will inevitably disclose trade secrets in his or her new position, courts consider "(1) the level of competition between the former employer and the new employer; (2) whether the employee's position with the new employer is comparable to the position he held with the former employer; and (3) the actions the new employer has taken to prevent the former employee from using or disclosing trade secrets of the former employer." *Saban v. Caremark Rx, L.L.C.*, 780 F. Supp. 2d 700, 734-35 (N.D. Ill. 2011) (citing *RKI, Inc. v. Grimes*, 177 F. Supp. 2d 859 , 876 (N.D. Ill. 2001)).

In *PepsiCo,* the Seventh Circuit upheld an injunction preventing an employee from working for a competitor for a period of time based on inevitable disclosure. 54 F.3d at 1267. There, PepsiCo's former employee, Redmond, held a relatively high-level position that gave him access to trade secrets related to PepsiCo's rival drink to Quaker's Gatorade. He had to sign an agreement that he would not disclose or use any confidential information related to PepsiCo obtained during his employment. *Id*. at 1264. Redmond was eventually offered a position with PepsiCo's rival, Quaker, and offered the position of Vice President of On Premises Sales for Gatorade. PepsiCo filed for an injunction arguing that Redmond had too much confidential

information about how it processes its products, the characteristics and target audience for its new sports drinks, its strategic plan for specific markets, and innovations in PepsiCo's selling and delivering systems. There, PepsiCo did not assert that its competitor had stolen its formula or list of distributors, rather that its former employee "cannot help but rely on [PepsiCo's] trade secrets as he helps plot Gatorade and Snapple's new course, and that these secrets will enable Quake to achieve a substantial advantage." *Id*. The Seventh Circuit explained that "[t]his type of trade secret problem may arise less often, but it nevertheless falls within the realm of trade secret protection under the present circumstances." *Id*. There, Quaker, Pepsi's competitor attempted to argue that it did not intend to use the confidential information, that Redmond signed an agreement with Quaker to not disclose trade secrets, and that the information would otherwise be useless in the specific task to which Redmond was assigned. The Seventh Circuit disagreed and stated that the threat was not that Quaker would directly copy the trade secrets but that Redmond "might be faced with a decision that could be influenced by certain confidential information that he obtained while at PepsiCo. In other words, PepsiCo finds itself in the position of a coach, one of whose players has left, playbook in hand, to join the opposing team before a big game." *Id*. The Court also noted that Redmond appeared to have accepted the Quaker position but initially only told supervisors that he was considering a new position and continued making calls upon PepsiCo's customers.

      Here, Plaintiff points to evidence that Novozymes was pursuing an "exclusive" partnership with its direct competitor, Green Plains, while also sending the same group of scientists and account representatives to learn about Plaintiff's trade secrets. Plaintiff also observes that just four days after its last knowledge-sharing meeting with Novozymes, Novozymes announced its exclusive partnership with Green Plains to enhance Green Plains' protein capture process. Plaintiff also points the Court to evidence that Novozymes represented to Plaintiff that staff scientist Joe

Maurer would work 100% on Plaintiff matters but he was also promised to Green Plains as the "day to day technical contact." ECF Nos. 271-2; 271-6. It also points out that despite Novozymes assertion that Green Plains is not interested in incorporating flocculent technology or dissolved air flotation technology, Green Plains' subsidiary, Fluid Quip[3], filed a patent application that indicates it is pursuing the same technology as Plaintiff. Plaintiff further points to evidence that the purported inventor of Fluid Quip's patent could not explain how he came to invent the information in the patent application. ECF No. 317 at 66–69.  Accordingly, Plaintiff argues that this is compelling evidence Fluid Quip had not invented anything but was merely stealing its ideas.

      Plaintiff has pointed the Court towards sufficient evidence in resolving this motion to dismiss, that Green Plains is a direct competitor, Novozymes is in a similar position of helping Green Plains improve its protein capture as it was when it was collaborating with Plaintiff, and that Novozymes did not take sufficient steps to protect Plaintiff's trade secrets. Instead, Plaintiff presents evidence that Novozymes sent the same scientists to work on both projects and did not take any action to protect its trade secrets until well after this lawsuit was initiated. This case seems to reflect the concerns found in *PepsiCo*, where the issue was not necessarily that the competitor would directly copy the trade secrets, but that it would still substantially benefit from trade secret knowledge. Here, the facts as presented by Plaintiff, suggest that Novozymes would inevitably use Plaintiff's trade secret to guide Green Plains in more effectively capturing protein and would benefit from the years of expensive trial and error that Plaintiff underwent in developing its product.

---

[3] At the time the patent was filed, Fluid Quip had just entered into a joint Collaboration Agreement with Green Plains and Novozymes. Two weeks after the signing of the collaboration agreement, Fluid Quip filed a provisional patent. Green Plains did not purchase a controlling stake in Fluid Quip until a few months later.

While Novozymes argues under ITSA and DTSA "a future threat as pled by Plaintiff is insufficient for standing," the plain language of the statutes and relevant case law do not support that assertion. *See* ECF No. 296 at 12. Instead, as Novozymes acknowledges, courts have granted injunctions solely based on the theory of inevitable disclosure under the ITSA. While Novozymes argues that the Seventh Circuit and Central District of Illinois have not squarely addressed whether the theory of inevitable disclosure applies to the DTSA, other courts have acknowledged that the DTSA and ITSA are generally analyzed together and have suggested that the theory of inevitable disclosure would apply to the DTSA. *See PetroChoice LLC, v. Amherdt*, No. 22-cv-02347, 2023 WL 2139207, at *5 n. 2 (N.D. Ill. Feb. 21, 2023); *Packaging Corp. of Am.*, 419 F. Supp. 3d at 1069 n. 7. Given the overlap in language, the Court sees no reason why the theory of inevitable discovery would not similarly apply to the DTSA. To the extent that Novozymes makes other arguments on this point, the Court finds them unpersuasive in light of the binding Seventh Circuit precedent and DENIES Novozymes' motion to dismiss on this point.

**B. Plaintiff has standing to enjoin threatened breaches under contract claim.**

Plaintiff also brings suit to enforce the Mutual Confidentiality Agreement. The Parties signed this agreement prior to Plaintiff sharing the information it considers trade secrets. The Parties both agree that a valid contract exists, but Novozymes asserts that it has complied with the agreement and Plaintiff cannot sue to enforce a threatened breach of the agreement. This argument, however, is belied by the plain language of the contract, which states that "[Novozymes] agrees that [Plaintiff], in addition to any other available remedies, shall have the right to an immediate injunction or other equitable relief enjoining any breach or threatened breach of this Agreement." ECF No. 307-1 at 4. Novozymes asserts that since this statement is found under the heading titled "remedies" Plaintiff cannot attempt to exercise any remedy until there has been a breach. The

heading of the section cannot undermine the plain language of the contract stating that Plaintiff may bring an injunction for threatened breach. For the same reasons that the Court found it appropriate for Plaintiff to bring suit for a threat of breach under the ITSA and DTSA, the Court similarly finds that the language of the Mutual Confidentiality Agreement allows for an injunction for a threat of a future breach.

### C. Unjust Enrichment

As explained above, the Court finds that there is standing for Plaintiff's claim due to the threat of inevitable breach. Plaintiff's response brief also argues that it is entitled to money damages under the theory of unjust enrichment resulting from Novozymes' acquisition of its trade secrets by false pretenses. ECF No. 328 at 3. Plaintiff argues that the DTSA and ITSA misappropriation definitions consist of acquiring the trade secret by improper means including misrepresentation. *Id*. at 4. Plaintiff points to Novozymes seeking out a joint venture with it while simultaneously pursuing Green Plains using the same team of scientists. Plaintiff also highlights the fact that only four days passed between their last knowledge sharing meeting with Novozymes and Novozymes' announcing their partnership with Green Plains.

Novozymes argues that the Amended Complaint does not sufficiently put them on notice that Plaintiff was pursuing a claim for obtaining trade secrets by improper means. However, the Amended Complaint alleges that Novozymes was dealing with Plaintiff "under false pretense," that the "trade secrets at issue have been improperly obtained" and that "the timing of Novozymes announcement of its partnership with Green Plains while it was actively misleading Plaintiff gives rise to a clear inference of Novozymes' bad faith." ECF No. 290. Moreover, as Novozymes acknowledges, the DTSA and ITSA define improper means to include "theft, bribery,

misrepresentation" and other means. ECF No. 353 at 5. Novozymes' focuses it argument largely on Plaintiff's alleged pleading deficiencies, but also claims Plaintiff lacks standing.

In short, the Court agrees that Plaintiff sufficiently put Novozymes on notice that it was alleging that it made misrepresentations in order to improperly obtain its trade secrets. Novozymes also makes a standing argument, arguing the Confidentiality Agreement did not stop it from working with other ethanol producers and that Plaintiff was aware that it had other customers before entering the agreement. Plaintiff has pointed sufficient evidence that there is suspicious timing and misrepresentation made about scientists being dedicated exclusively to its project. Accordingly, the Court agrees that this is enough to survive this motion to dismiss.

The Court has allowed the parties to provide additional briefing on the issue of whether money damages are recoverable under this theory and will address that at a later date.

## CONCLUSION

For the reasons stated above, and as stated at the oral argument held on April 25, 2023, the Court DENIES Novozymes North American Inc.'s Motion to Dismiss [295].

ENTERED this 1st day of May, 2023.

                                                      /s/ Michael M. Mihm
                                                      Michael M. Mihm
                                                  United States District Judge