**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | | |
|---|---|---|
| MARQUIS PROCAP SYSTEMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-1020 |
| | ) | |
| NOVOZYMES NORTH AMERICA, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION

Plaintiff Marquis ProCap Systems ("Marquis") and Defendant Novozymes North America, Inc. ("Novozymes") both filed motions to exclude certain experts. Marquis moved to exclude Novozymes' experts Dr. Timothy L. Fort (ECF No. 265) and Dr. Douglas P. Rivers (ECF No. 260). Novozymes moved to exclude Marquis' experts Lindsey Fisher (ECF No. 284) and Dr. Jeremy Javers (ECF No. 287). The Court heard oral argument on May 16, 2023. This opinion follows to provide additional explanation for the rulings announced at oral argument.

## FACTUAL BACKGROUND

The parties are familiar with the factual and procedural background of this case; the Court therefore only sets forth those facts directly relevant to the resolution of the issues before it. Pursuant to a Mutual Confidentiality Agreement, Marquis shared information about its protein capture system that, in short, extracted high protein feed from the stillage leftover from the ethanol process. This co-product is generally sold as livestock feed. Marquis asserts that while it was sharing this information, Novozymes was pursuing the development of a competing protein capture system with its competitor, Green Plains. Accordingly, Marquis asserts that Novozymes

1

misappropriated its information and will share that information with Green Plains without court intervention. Marquis asserts that Novozymes has a culture of harvesting customer information to drive sales to competitors in the same industry. Thus, the parties present competing experts on the ethanol industry, business ethics, and damages to support their various positions.

## LEGAL STANDARD

Federal Rule of Evidence 702 governs the admittance of expert testimony, and states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 creates "a gatekeeping role for the [trial] judge" in order to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 580 (1993). The *Daubert* opinion "sets forth a non-exhaustive list of guideposts to consult in assessing the reliability of expert testimony: (1) whether the scientific theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; and (3) whether the theory has been generally accepted in the relevant scientific, technical, or professional community." *American Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 817 (7th Cir. 2010) (citing *Daubert*, 509 U.S. at 593–94). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard"

by a preponderance of the evidence. *Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

The Seventh Circuit has made clear that "[even] a supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant under the test set forth by the Supreme Court in *Daubert*." *Id.* (quoting *Clark v. Takata Corp.*, 192 F.3d 750, 759 at n. 5 (7th Cir. 1999)). "An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Wendler & Ezra, P.C. v. Am. Int'l Grp*., Inc., 521 F.3d 790, 791–92 (7th Cir. 2008) (quoting *Mid-State Fertilizer Co. v. Exchange Nat'l Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989)). "It is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003). Where that link is missing, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Courts have also acknowledged that "[u]nless the expertise adds something, the expert is at best offering a gratuitous opinion, and at worst is exerting undue influence . . ." *United States v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996). "Expert testimony does not assist the trier of fact when the jury is able to evaluate the same evidence and is capable of drawing its own conclusions without the introduction of a proffered expert's testimony." *Aponte v. City of Chicago*, 2011 WL 1838773, at *2 (N.D. Ill. May 12, 2011); *Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 714 (7th Cir. 2004) (affirming exclusion of an expert's opinion based on a videotape because "the videotape could be played for the jury and entered into evidence, and consequently, jurors could make a determination for themselves. . . . Based upon this independent assessment. . . . the jury could then draw [its own] inferences . . . and expert testimony would be

of no help."). Finally, experts may not testify "as to legal conclusions that will determine the outcome of the case" under Rule 702. *Good Shepard Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) (excluding expert testimony that consisted of legal conclusions).

## DISCUSSION

There are a few reoccurring issues that are relevant to all the experts. First, experts may not testify "as to legal conclusions that will determine the outcome of the case." *Good Shepard Manor Found. Inc.*, 323 F.3d at 564. Such testimony is also not helpful to the Court. Accordingly, the experts should limit themselves to their area of expertise and not insert legal conclusions that will determine the outcome of the case into their testimony. The Court also observes that at least some of the challenges appear more focused on a disagreement with the expert's conclusions, but "the correct inquiry focuses not on 'the ultimate correctness of the expert's conclusions, 'but rather on 'the soundness and care with which the expert arrived at h[is] opinion.'" *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 873 (7th Cir. 2021) (quoting *Timm v. Goodyear Dunlop Tires N. Am., Ltd.*, 932 F.3d 986, 993 (7th Cir. 2019)). The Court does not intend to signal agreement with an expert simply because it is allowing his or her testimony and disagreements with ultimate correctness can be challenged on cross-examination. With that in mind, the Court will address the challenges to each of the experts below.

### A.    Plaintiff's Expert: Dr. Jeremy Javers

Marquis seeks to introduce Dr. Jeremy Javers as an expert to testify about six main topics: (1) the similarities between Fluid Quip and Marquis technologies; (2) how competitive the ethanol industry is; (3) whether the information Marquis shared is innovative, valuable, and not generally known; (4) the alleged internal culture of distribution; (5) the pressure Novozymes puts on its employees to sell; and (6) whether it is likely Novozymes practices would lead to use of Marquis'

4

information. ECF No. 288-1 at 10. Javers is currently employed as the Director of Research and Development at Prairie Aquatech. *Id*. at 4. He was previously Director of Quality and Development for BioZymes, Inc., where he was responsible for innovating products that are developed from operations and manufacturing of various feed ingredients with prebiotics and postbiotics. Prior to that, he spent approximately eighteen years in research and development in the field of grain refining, primarily within ethanol production. *Id*. He also worked with both Marquis Energy and Novozymes. He received a Bachelor of Science in Chemistry for Information Systems from Dakota State University in 2001, and a Ph.D. in Biological Sciences with a focus on Industrial Microbiology from South Dakota State University. His Ph.D. research focused, in part, on separation of thin stillage. *Id*.

Novozymes seeks to exclude Javers from testifying about topics 3, 4, and 6, arguing his opinions are not based upon discernible methods, rely on faulty assumptions, and are not helpful to any determination by the factfinder. With respect to topic 3, whether the information is innovative, valuable, and not generally known, Novozymes argues that some of the information that Javers identifies as "proprietary information" are instead only general categories of information that do not qualify as trade secrets. Javers will not be permitted to decide for the Court what constitutes a trade secret. However, he does have the relevant background in the ethanol industry to say what is innovative, generally known, and what information might be helpful to other protein capture systems, and thus, will be permitted to opine on this issue.

Novozymes also seeks to exclude Javers' opinion regarding the information that Novozymes shares internally about different customers. Javers is concerned that Novozymes disseminated information to the entire North America biofuels team about the enzyme blends being used and other information about how competitors operate their ethanol plants. ECF No. 288-1 at

31. He asserts that the information sharing is putting plant operators and technology providers' confidential information at risk and that customers would expect that some of the information they share to be kept in confidence and not used to leverage business with their competitors. *Id*. at 35–37. Novozymes argues that Javers does not have expertise or experience with confidentiality practices and suggests that the sharing of information was not as widespread as Javers seems to suggest. Finally, Novozymes objects to Javers opining whether it is likely information would have been shared absent an injunction.

Here, he compares his applicable experience in the industry to explain what is innovative, generally known, and could be helpful. The Court, not Javers, will determine the propriety of the injunction and his testimony should focus on his area of the expertise that will assist the fact finder, leaving legal decisions to the Court. He will, however, be permitted to testify to his understanding and reasoning as to why he believes it is likely Novozymes would share the purportedly confidential information and what the industry standards and expectations are regarding confidential information.

Ultimately, the majority of Novozymes' objections will be best addressed on cross-examination. Novozymes can challenge Javers underlying assumptions and confront him with evidence that it believes undermines his opinion. However, the Court finds that Javers is qualified to testify about industry norms and expectations referenced in topic 3, the alleged culture of distribution and referenced in topic four, and whether it is likely Novozymes practices may lead it to share Marquis' information referenced in topic six.

### B.    Plaintiff's Economic Impact Expert: Lindsey G. Fisher

Marquis seeks to introduce the testimony of Lindsey G. Fisher to opine on the economic impact and competitive harm implicated by Marquis' allegations against Novozymes and to

evaluate an amount of damages that would be appropriate in the event that Novozymes is found liable for misappropriating Marquis' proprietary information. ECF No. 285-1 at 7. Fisher is a Director at Stout Risius Ross, LLC, a financial advisory firm specializing in financial consulting. *Id.* at 6. Fisher has a Master of Business Administration from the Kellogg School of Management at Northwestern with a concentration in Accounting, Management & Organizations, and Entrepreneurship. She is also a Certified Licensing Professional and a Certified Fraud Examiner and received a Bachelor of Science in Finance and International Studies from Indiana University. *Id.*

Fisher offers opinions in three main areas: (1) the financial and economic factors relating to a permanent injunction; (2) the appropriate unjust enrichment damages; and (3) other indicators of value of the proprietary information at issue and the value of the protein capture industry. Novozymes argues first that her opinion should be excluded because Marquis does not have any damages and thus, there are no damages to calculate. At oral argument, the Court initially stated that it would allow her opinions on unjust enrichment. However, based on the Court's later decision at oral argument disallowing unjust enrichment damages, Fisher's opinions on that issue are no longer relevant and thus, will not be allowed.

Fisher's opinions on future irreparable harm, however, remain relevant. She opines that Marquis will suffer irreparable future harm if its proprietary information is misused. She explains the importance of being first to market with a new technology, the possibility competitors who did not have to spend substantial resources developing the technology could irrevocably erode the prices, and that losing business to their competitor would mean it is not likely to be able to compete for the business for years. ECF No. 285-1 at 29–30. She asserts that the competitive harms make the possibility of future damages difficult to calculate. Novozymes argues that her opinions on this

subject are merely legal conclusions and otherwise contradictory since she both calculated unjust enrichment while also claiming that the future harm is incalculable. ECF No. 285 at 13. Marquis argues that there is no reliable calculation to quantify all the harm Marquis will suffer and that there is not just one single harm to Marquis. The Court is persuaded that Fisher sufficiently explained her methodology and reasoning regarding how she found the potential future harm incalculable and will be permitted to testify on that issue.

### C.   Defendant's Business Ethic's Expert: Dr. Timothy L. Fort

Defendant seeks to introduce Dr. Timothy L. Fort as an expert. ECF No. 263-1. Dr. Fort earned his Juris Doctor Degree from Northwestern University School of Law, a master's degree in Systematic Theology from Notre Dame, and a PhD in Theology with a Business cognate, which he argues is equivalent to a doctorate in Business Ethics with half of his work at Northwestern's Kellogg School of Management and the other half at Garrett Theological Seminary. *Id*. at 3–4. Dr. Fort practiced law for several years before embarking on his teaching career. He is currently Professor of Business Ethics and a Professor of Business Laws and Ethics at Indiana University's Kelley School of Business. *Id*. at 5. Dr. Fort seeks to offer six primary opinions and Marquis seeks to exclude each of his opinions, as explained below.

1) **Dr. Fort does not have adequate training, experience, or methodology to opine on whether Novozymes will remember and thus, use, any purportedly confidential information in servicing other customers.**

Dr. Fort states in his report that he has observed that people "unlearn" information all the time and after reviewing the evidence here, opines that "it would be remarkable for Novozymes employees to remember details of a process that (1) was not fully explained to them in 2019 and (2) to the extent Marquis explained that process orally to them, is reflected only in notes and emails that have been sequestered since at least 2020." ECF No. 263-1 at 17, 24.

The Court agrees with Marquis' observation that Dr. Fort does not have any relevant qualifications to opine on human memory. While there are instances where experience can provide a basis for expertise, Dr. Fort's cited experience is teaching college students and observing them forget material. *See Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (knowledge based on experience can also be sufficient); *United States v. Parkhurst*, 865 F.3d 509, 516 (7th Cir. 2017) ("[t]raining and experience are proper foundations for expert testimony").

First, the Court finds that this is a materially different context of highly trained professionals learning about something related to their area of expertise for their work. Dr. Fort's experience is only with students.  Dr. Fort also cites that individuals from Marquis forgot various details about what information Marquis might have provided to Novozymes. The Court does not need expert testimony to evaluate this evidence and will draw its own conclusions. *See Taylor v. Illinois Cent. R.R. Co.*, 8 F.3d 584, 586 (7th Cir. 1993) ("Notwithstanding [the proposed expert's] lengthy experience in the railway industry, any lay juror could understand this issue without the assistance of expert testimony. Therefore, it was proper for the district court to exclude [the proffered expert] testimony."); *accord, e.g., Hoffman*, 368 F.3d at 713-14. Here, the factfinder is able to hear from the witnesses themselves about what they remember and why they may have forgotten. Dr. Fort's testimony about his experience with his students forgetting information is not directly relevant to highly trained employees learning information in their field for their job and he has insufficient experience to support his proffered "expert" testimony. Accordingly, the Court finds that testimony related to this topic will be barred at trial.

### 2) Dr. Fort does not have the relevant background to testify whether the ethanol industry is more "interoperational" than competitive.

Dr. Fort attempts to undermine Javers' testimony that the ethanol industry is highly competitive in the area of protein separation and his characterization that this area is in an "arms

race." ECF No. 263-1 at 25. He asserts that, based on his years of teaching in a business school, interacting with business students, and counseling businesses as a lawyer and ethics consultant, he believes that "a market should not be considered 'competitive' merely because people involved in that market characterize it as such." *Id*. at 26. Dr. Fort summarizes the testimony from various depositions where witnesses note some forms of professional collegiality in the ethanol industry and some statements that there is not competition in every aspect of the ethanol industry. *Id*. at 28–32. He also cites testimony from Jason Marquis where he explained that Marquis knew Novozymes worked with Fluid Quip at the time the parties entered the Confidentiality Agreement. Finally, he states that in his experience with thousands of businesspeople and business students, they frequently initially describe their market and industry as highly competitive but when pressed will share additional experiences of support and collaboration. *Id*. at 30. He concludes that "the industry is not solely 'competitive,' but instead interoperational, relational, reputational." *Id*. at 33.

Dr. Fort lacks any experience in the ethanol industry. His cited experience is as an ethics professor with unnamed business people and students who would initially characterize their industry as highly competitive before conceding that there are examples of collaboration and interdependence in the industry. Dr. Fort did not show that he attempted to understand the ethanol industry or that he utilized reliable methodology to form this opinion. Accordingly, the Court finds that this testimony will be excluded.

**3) Dr. Fort's experience in ethics, business, and law allows him to discuss employee accountability and ethical compliance, whether Novozymes has a strong confidentiality and legal compliance system, and whether Novozymes' conduct matches well with research about executives who run ethical companies.**

Dr. Fort also opines that Novozymes follows a strong confidentiality protocol to protect confidential or proprietary information. He explains that the basis for his opinion is his method of categorizing compliance programs into three groups that involved (1) establishing clear policies

and guidelines; (2) matching corporate expressions of compliance goals with incentives and resources; and (3) aspiring for the compliance program to achieve positive goals as opposed to simply avoiding negative actions. ECF No. 263-1 at 36–37. He then explains in detail why he believes Novozymes meet each criterion, concluding that Novozymes "matches rhetoric and rewards, provides incentives for employees, provides multiple learning opportunities, and has proven success in maintaining a reputation of being a trusted supplier." *Id*. at 37–49.

Marquis argues that Dr. Fort is merely using his purported expertise to rubber stamp statements made by Novozymes and to summarize information already in the record. While Marquis can challenge the credibility of the evidence forming the basis of his opinion on cross-examination, this is not grounds to exclude this opinion. Instead, the Court finds that Dr. Fort has relevant expertise, used a reliable method, and relied upon sufficient facts. Accordingly, he will be allowed to testify about Novozymes' confidentiality protocol.

Marquis also argues Dr. Fort's opinion about whether future disclosure is likely is just a subjective opinion and serves to vouch for lay witnesses. While this section of his expert report was shorter, it appears based upon the evaluation of Novozymes culture and effectiveness of policies which he outlined in the previous paragraph. As a result, the Court finds Dr. Fort has sufficient expertise and methodology to opine on this subject. Again, Marquis' critiques are best saved for cross-examination, particularly since Marquis proposed its own expert on the issue of whether disclosure is likely.

Dr. Fort also opines that Novozymes does not pressure its employees in such a fashion that would compromise the confidentiality protocols and that Novozymes' conduct matches well with research about executives who run ethical companies. *Id*. at 52. In reaching this conclusion, he cites to several factors including Novozymes' robust legal compliance system, the lack of evidence

of specific pressure placed on employees, relatively small bonuses, and that many employees are unaware of the methodology for determining bonuses. *Id*. at 52. He also explains that in a peer reviewed book that he published, a key factor is the "tone at the top" and highlights the manner in which Novozymes' directors and senior legal officers stress the importance of confidentiality and compliance. Accordingly, he has outlined a sufficient methodology and Marquis critiques are better suited for cross-examination.

Finally, Dr. Fort opines that Novozymes' strong policies on compliance, confidentiality, and technological support make it unlikely to disclose Marquis' confidential information. Marquis complains about this conclusion, but Marquis has proposed its own expert to testify that he believes it is likely the information will be shared. Dr. Fort also explains his methodology and basis for his opinion on Novozymes ability to hold information in confidence. Accordingly, the Court will allow this opinion as he explains his methodology and the sources of information.

### D.    Defendant's Expert: Dr. Douglas B. Rivers

Defendant seeks to introduce Douglas B. Rivers, PhD as an expert regarding Marquis' alleged failure to identify any protectable trade secrets possessed or misused by Novozymes. Marquis seeks to exclude Dr. Rivers' testimony entirely, or alternatively, bar his opinion with respect to any legal issues. Marquis does not attack Dr. Rivers' qualification or directly attack his conclusions in his field of expertise, but rather focuses on the fact that he did not write the legal section of his expert report. ECF No. 267 at 1. Novozymes explains that the legal section was included to explain the law Dr. Rivers relied on in forming his expert opinions and is not intended to serve as a legal conclusion.

Counsel may assist experts with their expert report as long as the report reflects the actual views of the expert. *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 477 (9th Cir.

2021) (affirming district court's decision to allow in expert testimony even though expert admitted that counsel wrote 60% of the report because the parts written by counsel constituted background and expert testified the report "accurately reflected his analysis and opinion"); *United States v. Kalymon*, 541 F.3d 624, 638 (6th Cir. 2008) ("A party's attorney can reduce an expert's oral opinion to writing so long as the report reflects the actual views of the expert"); *Manning v. Crockett*, No., 1999 WL 342715 , at *3 (N.D. Ill. May 18, 1999)(". . . some attorney involvement in the preparation of an expert report is permissible, but that the expert must also substantially participate in the preparation of his report."); *First Midwest Bank v. Rush Univ. Med. Ctr.*, 2020 WL 4284554 , at *2 (N.D. Ill. July 27, 2020)("While there is no dispute that counsel drafted the experts' reports, there is also no indication that the experts were not sufficiently involved in their preparation such that the reports may not be fairly considered as setting forth their own opinions."); *Isom v. Howmedica, Inc.,* No. 00-CV-5872, 2002 WL 1052030, at *1 (N.D. Ill. May 22, 2002)(expert "was sufficiently involved in the preparation and revision of the report that it may be fairly considered as setting forth his opinions, not those of counsel. We reject a formalistic approach which would require that the expert be the person who actually puts pen to paper (or fingers to keyboard)."). However, there here are limits. Courts exclude experts when they find that the attorneys were involved to such an extent that that the court questions whether "the party hiring him has put words in his mouth" with the expert serving only as "a highly qualified puppet." *DataQuill Ltd. v. Handspring, Inc.*, 01-CV-4635, 2003 WL 737785, at *4 (N.D. Ill. Feb. 28, 2003); *see also Numatics, Inc. v. Balluff, Inc.*, 66 F. Supp. 3d 934, 941 (E.D. Mich. 2014) ("An expert witness who is merely a party's lawyer's avatar contributes nothing useful to the decisional process").

Here, counsel only drafted the legal section and Dr. Rivers testified that he spent 60 to 80 hours on his report. ECF No. 315-10 at 12. Dr. Rivers' deposition testimony indicates that the relevant opinions are his own. ECF No. 315-10. Thus, the Court agrees that Dr. Rivers drafted the relevant portions of his expert report and may opine on the issue of trade secrets. To the extent Novozymes intends to have Dr. Rivers offer any legal opinions, that will be excluded, but it appears there is little disagreement on that issue.

## CONCLUSION

For the reasons stated above, Marquis ProCap Systems Motions to Exclude Dr. Douglas B. Rivers [265] and Dr. Timothy L. Fort's [260] opinions are GRANTED IN PART AND DENIED IN PART as explained above; Novozymes North America, Inc.'s Motion to Exclude Dr. Jeremy Javers [287] is DENIED.  Novozymes North America, Inc.'s Motion to Exclude Lindsey G. Fisher [284] opinions are now GRANTED in part to the extent that irrelevant testimony will be excluded and otherwise DENIED.

ENTERED this 2nd day of June, 2023.

_/s/ Michael M. Mihm_____
Michael M. Mihm
United States District Judge